NO. 14-1882

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

In re CertainTeed Fiber Cement Siding Litigation.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, MDL Docket No. 2270

Appellants' Opposition to Motion for Summary Affirmance
and Cross-Motion for Sanctions under 28 U.S.C. § 1927

Theodore H. Frank
1718 M Street NW, No. 334
Washington, D.C. 20036
(703) 203-3848

Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, Texas  78401
Telephone:  (361) 698-5200
Facsimile:  (361) 698-2222
Attorneys for Appellants

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities ........................................................................................... ii

Introduction ....................................................................................................... 1

Argument ............................................................................................................ 2

I.     Both Jabrani's objection and appeal are meritorious. ............................ 2

      A.    Background ................................................................................ 2

          1.  The Settlement. ................................................................. 2

          2.  The objectors and objection. ........................................... 7

      B.    *Baby Products* requires reversal. ............................................ 9

      C.    Rule 23(h), *Mercury Interactive*, and *High Sulfur* each independently require reversal. ................................................ 13

      D.    *Eubank v. Pella Corp.* requires reversal. .............................. 15

      E.    Class counsel's *ad hominem* attacks do not justify summary action. ......... 17

II.    Class Counsel's motion vexatiously multiplies proceedings and merits sanctions under 28 U.S.C. § 1927. ................................................ 19

Conclusion .......................................................................................................... 20

Proof of Service ................................................................................................. 22

# Table of Authorities

## Cases

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
        643 F.3d 1165 (9th Cir. 2010) ............................................................................17-18

*In re Baby Products Antitrust Litig.*,
        708 F.3d 163 (3d Cir. 2013) ............................................................1, 2, 9-13, 16, 17

*In re Bluetooth Headset Prod. Liab. Litig.*,
        654 F.3d 935 (9th Cir. 2011) ...........................................................................

*In re Deepwater Horizon*,
        732 F.3d 326 (5th Cir. 2013) ........................................................................4

*Dennis v. Kellogg*,
        697 F.3d 858 (9th Cir. 2012) ........................................................................ 17

*Dewey v. Volkswagen AG*,
        681 F.3d 170 (3d Cir. 2012) ........................................................................ 17

*In re Diet Drugs Prods. Liab. Litig.*,
        401 F.3d 143 (3d Cir. 2005) ........................................................................ 15

*In re Dry Max Pampers Litig.*,
        724 F.3d 713 (6th Cir. 2013) ........................................................................ 11, 17

*Eubank v. Pella Corp.*, No. 13-2091,
        -- F.3d --, 2014 WL 2444388,
        2014 U.S. App. LEXIS 10332 (7th Cir. Jun. 2, 2014)
        (slip op. attached as Exhibit 1) ........................................................1, 15-17

*In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*,
        55 F.3d 768 (3d Cir. 1995) ...........................................................................

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
        517 F.3d 220 (5th Cir. 2008) ........................................................... 1, 8, 14-15

*In re HP Inkjet Printer Litig.*,
        716 F.3d 1173 (9th Cir. 2013) ........................................................... 17

*In re Mercury Interactive Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ..........................................................................1, 13-15

*United States v. Fortner*,
455 F.3d 752 (7th Cir. 2006)...........................................................................19-20


## **Rules and Statutes**

28 U.S.C. § 1927 ................................................................................................2, 19-20

Fed. R. App. Proc. 27............................................................................................. 19

Fed. R. App. Proc. 27(a)(3) ................................................................................... 19

Fed. R. App. Proc. 27(d)(2) ................................................................................... 19

Fed. R. App. Proc. 28............................................................................................. 19

Fed. R. Civ. Proc. 23(a)(4) .................................................................................... 15

Fed. R. Civ. Proc. 23(e)(5) .................................................................................... 18

Fed. R. Civ. Proc. 23(g)(4) .................................................................................... 16

Fed. R. Civ. Proc. 23(h) ...............................................................................8, 13-15

Fed. R. Civ. Proc. 23(h)(1).................................................................................... 13

LAR 27.4...............................................................................................................1-2


## **Other Authorities**

AMERICAN LAW INSTITUTE,
PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010) ................11-12

Federal Judicial Center,
*Manual for Complex Litigation (Fourth)* § 21.71 (2004) .......................10, 12

Liptak, Adam, *When Lawyers Cut Their Clients Out of the Deal*,
N.Y. TIMES, Aug. 13, 2013, at A12 ........................................................ 17

## Introduction

Class counsel's motion for summary action is frivolous. It rests on fundamental misrepresentations of the settlement, and entirely ignores binding Third Circuit precedent that not only precludes class counsel's motion for summary action, but requires reversal of the settlement approval. *In re Baby Prods. Antitrust Lit.* 708 F.3d 163 (3d Cir. 2013). It fails to mention a Ninth Circuit decision that the district court contradicted, and that would require creation of a circuit split if this Court affirmed. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). It fails to mention a Fifth Circuit decision that the district court never mentioned, and that would require creation of a circuit split if this Court affirmed. *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008). It further fails to acknowledge a recent Seventh Circuit decision—in an appeal brought by counsel for appellants here— reversing approval of a similar settlement with similarly objectionable issues. *Eubank v. Pella Corp.*, No. 13-2091, -- F.3d --, 2014 WL 2444388, 2014 U.S. App. LEXIS 10332 (7th Cir. Jun. 2, 2014) (slip op. attached as Exhibit 1).

Each of these four questions or precedents individually presents a substantive issue of law that makes the appeal non-frivolous. But this not just a case where summary dismissal would be improper; if anything, this is a case where the Court could simply grant summary reversal because of the failure of the district court to apply the correct standard of law.

Plaintiffs' motion is not only substantively frivolous, but procedurally abusive: class counsel fails to come anywhere near the high standard for summary action under

LAR 27.4. Class counsel is bringing this motion for vexatious reasons to require appellants to engage in multiple rounds of merits briefing and to get two bites at the apple by making both a motions panel and merits panel consider the appeal. Appellees' motion should be denied, and sanctions should be issued under 28 U.S.C. § 1927 for the vexatious multiplication of proceedings.

**Argument**

**I.      Both Jabrani's objection and appeal are meritorious.**

**A.      Background**

**1.      The Settlement.**

Class counsel asserts that this is a $103.9 million settlement, but that is precisely the issue that is in dispute.

True, the Settlement (attached as Exhibit 2) creates a $103.9 million fund, to be paid between the preliminary approval order and 2019. Settlement § 4.1. But, while class counsel will be paid their $18.8 million immediately after the "Effective Date," (defined at Settlement § 1.1(m)), as in *Baby Products*, the fund provides no guarantee that class members will be paid anything at all.

"To recover under the Claims Program, a Settlement Class Member must properly complete a Claim Form… and provide all required supporting documentation." Settlement § 6.4; *see also id.* §§ 6.5, 6.6, 6.15 (describing required documentation). The claim form (the English version of which is attached as Exhibit 3) is eight pages long, including an intimidating three-paragraph 506-word release in legalese redundant with the release in the settlement. Any failure in documentation

permits the claims administrator to reject a claim, though the claimant may supplement his claim within certain time limits, appeal some types of denied claims within certain time limits, and resubmit denied claims once a year. Settlement §§ 6.12, 6.18. Though this is effectively a new legal proceeding, including the possibility of property inspection (Settlement §§ 6.7, 6.14), a claimant is forbidden from using a third party to help fill out a claim form. Settlement § 6.9.[1] The claims process is to remain open for six years or until the claims fund is exhausted. Settlement Addendum B (Dkt. 109) (attached as Exhibit 4). However, CertainTeed has no obligation to notify class members of the existence of the Settlement Fund after the end of the initial six-year claims process. Settlement § 10.12.

If a claim is accepted, a formula is used to provide partial payment of the claim to the class member: 50% of the partial payment within days of the accepted claim, and, if (as is likely the case) there remain Settlement Funds at the conclusion of the six-year claims period, 50% of the partial payment at the conclusion of six years after the Settlement Effective Date, likely some time in 2021. Settlement §§ 7.2, 7.3. For example, a class member with a 2003 original installation and a $7,000 claim that is approved will receive $1,400 when they make their claim, and, if funds remain, a second payment of $1,400 in 2021.

---

[1] The right of class members to "retain[] their own attorney," as class counsel asserts (Motion 13-14) is thus illusory, since no attorney will be willing to represent an individual class member without a right to part of the proceeds of the representation—unless the class member is willing to pay an hourly rate that likely exceeds the value of his or her claim.

The calculation of the contingent second payment amount is left ambiguous by Settlement § 7.3. The settlement notice stated that the "maximum amount payable could ultimately be the full value of the claim without an adjustment." Long Form Notice ¶ 10 (attached as Exhibit 5). Class counsel represented to the district court that this is the correct interpretation of the settlement. Dkt. 87 at 11-12. If so, the second payment would be $5,600, rather than $1,400. But the settlement itself states that At the end of the claims period, the Claimant will receive a second payment, and depending on the claims rate may receive the full value of their claim **with a reduction for usage**." Settlement § 7.3; *accord* District Court Opinion 10 (Motion Exhibit A); *see also* Dkt. 87-2 at ¶ 7 (class counsel declaration providing reasoning for decision that class members would not receive 100% of their damages); *but see* District Court Opinion 35 ("may receive up to 100% of their damages"). It is hard to know what a "reduction for usage" means if not the schedule for reduction for usage that § 7.2 commands; the settlement website calculator consistently tells class members that their claims will face such reductions. To Jabrani's knowledge, CertainTeed has not waived the right to ask for this interpretation in 2021, and is permitted to go to the Court to ask for enforcement of the settlement as written. Settlement §§ 6.23, 15.4, 16.6, 16.11. *Cf. In re Deepwater Horizon*, 732 F.3d 326, 345-46 (5th Cir. 2013) (defendant obtains preliminary injunction against payments under settlement agreement due to dispute over meaning of settlement agreement). Appellees' claim that Settlement § 7.3 permits Claimants to obtain "up to 100% of their damages" (Motion 7) is simply not a fair representation of the actual language of the settlement agreement.

The Settlement purports to waive any liability of class counsel or CertainTeed for irregularities in the claims process. Settlement § 6.24.

The Settlement expressly provides that "unexpended funds shall be returned to CertainTeed." Settlement § 4.5. Addendum B to the Settlement provides that the Claims Administrator will accepts claims until the Settlement Fund is exhausted after the close of the six-claim claims period, but does not repeal CertainTeed's rights under Settlement § 4.5. Class counsel's assertion to the contrary (Motion 7 n.7) is not supported by the settlement language.

Jabrani's objection that the number of claims under this system would be low has been borne out. As class counsel concedes (under the guise of bragging), there have been only 2,016 claims. Motion 2. If we pretend that CertainTeed won't seek to enforce the plain language of Section 7.3, charitably assume that all 2,016 claims will be granted (when in fact it is a certainty that many will be denied because of the hoops the settlement creates), and charitably assume that the average claim is of the amount that class counsel used in its example in its briefing and Long Form Notice below (Opinion 9), that means that class members will be paid

$$\$1,820 \times 2,016 = \$3,669,120 \text{ in year } 2015$$

$$\$5,180 \times 2,016 = \$10,442,880 \text{ in year } 2021$$

Even under generous assumptions, this is a total of $14.1 million to the class, paid mostly in 2021, when it is worth significantly less than it is worth today. Class counsel will receive $18.8 million upon the Effective Date in 2015. If CertainTeed successfully enforces the plain language of the Settlement as the Settlement permits it to do, then class members will receive only $7.3 million under these generous assumptions.

If we further grant class counsel's generous assumption that there will be a total 1.7% claims rate for 300,000 structures[2] (Jabrani contends that the number will be much lower[3] and the district court made no findings), then the class will receive *at most* $18.6 million—$35.7 million if CertainTeed waives its rights under § 7.3. That will leave *at least* $50 to $70 million in the Settlement Fund in 2021—more if we do not grant the fiction of generous assumptions, as we shouldn't, since the burden rests on the moving parties to prove settlement benefit. Because some claims will be denied, some class members with claims will not make claims, and there is no evidence that the Court's example of payment is typical of the class's allowable claims, the amount left over in the Settlement Fund will surely be more.

The Settlement simply has no provision for what happens to these funds— other than the parties' assertion that there will be an infinitely long claims process where the funds are eventually exhausted several decades from now. Addendum B.

---

[2] Dkt. 87-2.

[3] Class counsel represented to the district court that claims administration would cost only $571,468, a finding the district court adopted. Opinion 49. It's difficult to imagine that a claims process that includes, *inter alia*, the right of inspection and appeal, scrutiny of photographic and documentary evidence, evaluation of R.S. Means data, negotiations over the number of squares eligible for replacement, and the appointment of an independent claims reviewer (Settlement § 6) will really cost less than $115/claim. Either class counsel underestimated the administration expense or overestimated the number of claims—and for the entire settlement fund to be exhausted as the district court held would happen, there must be 13,000 to 30,000 or so claims, in which case the claims administrator is evaluating each claim for an average cost of only $19 to $44. The district court failed to account for this discrepancy between its two inconsistent findings, though it was raised in the Jabranis' objection. Objection 8.

Class counsel and the lower court (Opinion 11) assert that the money will go to class members and that no money will ever be returned to CertainTeed. How? The settlement has no provision of payment to class members outside of the Remedy in § 7. There are three possibilities: (1) the parties just leave more than $70 million in a Settlement Fund until the end of time without anyone trying to obtain economic advantage from this money; (2) CertainTeed moves to enforce § 4.5 of the Settlement and reclaims the more than $70 million for itself, with a promise to pay the tiny number of claims that occur after 2021; or (3) the parties agree to a modification of the settlement to distribute the unused funds or most of the unused funds to *cy pres*. The first option is implausible; the second two directly contradict the premise of the district court's reasoning approving the settlement and fee request. What is quite certain will not happen, as class counsel's own motion shows, is that the entire settlement fund will be exhausted with payments to the class.

2.    **The objectors and objection.**

Amirali and Janet Jabrani and Real Homes Inc. (collectively "Jabrani" or "the Jabranis") between them own four properties with CertainTeed fibercement siding that was installed in 2005, making them members of the Settlement Class. Settlement §§ 1.1(bb), (cc).

In 2011, the Jabranis complained to CertainTeed about gapped and cracking siding on one of their properties. CertainTeed offered to provide replacement siding to the Jabranis before there was any class settlement. This is equivalent to

approximately 40% of the total cost of replacing the siding: materials, labor, and paint. The Jabranis rejected this settlement offer.

The settlement does not treat the Jabranis any better than the existing offer on the table to them. Under the settlement, *if* the claims administrator accepts their claim, the Jabranis will be entitled to 24% of the total replacement cost after their claim is accepted, and a second payment of 24% six years after the Settlement Effective Date some time in 2021. Settlement §§ 7.2, 7.3. Given the time-value of money, and the possibility the claims administrator will reject their claim, the *incremental* value of the settlement to the Jabranis is zero or worse—but class counsel is claiming the entire 48% as a benefit entitling themselves to payment today.

The Jabranis objected, *inter alia*, that the $109 million valuation of the settlement was illusory because there would not be $109 million worth of claims and because class counsel was double-counting as value benefits that CertainTeed was providing class members pre-settlement, and thus either CertainTeed or third-party *cy pres* would capture the vast majority of the settlement fund; objected to the ambiguity of Section 7.3 and its inconsistency with the class notice; objected that the settlement violated Rule 23(h)'s requirement of notice to the class of the *motion* for attorneys' fees; that the settlement impermissibly delegated the allocation of fees to class counsel under *High Sulfur*; and that the attorneys' fee request was disproportionate to the likely actual class recovery. Objection (Dkt. 50) (attached as Exhibit 6). The district court rejected all of the objections (without ever mentioning the *High Sulfur* problem), and assumed on the basis of Addendum B that the settlement fund would be exhausted

without any inquiry into the number of allowed claims that were actually made on the settlement fund.

## B.    *Baby Products* requires reversal.

*Baby Products* is directly on point. In *Baby Products*, defendants created a $35.5 million fund of which class counsel claimed $14 million for themselves. 708 F.3d at 169. Objectors (represented by Jabrani's counsel) protested that the settlement was not worth $35.5 million: because the claims process was convoluted, most of the money would go to *cy pres*, rather than to the class. This Court reversed:

> Young's overarching concern, and ours as well, is that the settlement has resulted in a troubling and, according to counsel for the parties, surprising allocation of the settlement fund. … Though the parties contemplated that excess funds would be distributed to charity after the bulk of the settlement fund was distributed to class members through an exhaustive claims process, it appears the actual allocation will be just the opposite. Defendants paid $35,500,000 into a settlement fund. About $14,000,000 will go to class counsel in attorneys' fees and expenses. Of the remainder, it is expected that roughly $3,000,000 will be distributed to class members, while the rest— approximately $18,500,000 less administrative expenses—will be distributed to one or more *cy pres* recipients.

> We vacate the District Court's approval of the settlement because the Court was apparently unaware of the amount of the fund that would be distributed to *cy pres* beneficiaries rather than being distributed directly to the class. … [W]e confirm that courts need to consider the level of ***direct benefit provided to the class*** in calculating attorneys' fees. …

> We vacate the District Court's orders approving the settlement and the fund allocation plan because it did not have the factual

basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class. Removing attorneys' fees and expenses, approximately $21,500,000 (less costs of administration) of the settlement were designated for the class, but only around $3,000,000 of that amount actually will be distributed to class members …

[A]warding attorneys' fees based on the entire settlement amount rather than individual distributions creates a potential conflict of interest between absent class members and their counsel. …

In this case, class counsel, and not their client, may be the foremost beneficiaries of the settlement. …

In evaluating a fee award, it should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process. This may require it "to delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete." Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2008). …

We vacate the District Court's orders approving settlement and the fund allocation plan because the Court did not have the necessary factual information to determine whether the settlement will provide sufficient direct benefit to the class. [*Id.* at 169-70, 175, 178, 179, 181.]

As in *Baby Products*, the district court did not make any reasonable determination of the actual payout to the class, and based the settlement value on the total fund. As in *Baby Products*, the class will *actually* receive only a small portion of the fund, and class counsel has provided no data on what the class will actually receive. (The data class counsel has provided—2,016 claims to date and a likely overestimate of 400-500 claims a year during the six-year claims process—suggests that the

attorneys' $18.8 million award will outstrip what the class receives.) The district court made no findings about the amount of the fund that would be left over, and made no consideration about what would happen to the more than $71 million that would be left over in 2021 under reasonable scenarios.

Class counsel fails to mention *Baby Products* in their motion, though they were well aware that that decision was the central basis of Jabrani's objection. They have waived any claim that summary disposition on this issue is appropriate—especially since, on its face, the district court opinion committed reversible error in failing to consider actual direct compensation to the class, instead looking solely at the size of the fund with a small deduction for historical warranty claims. Opinion 39-40.[4] This was the only mention of *Baby Products* in the lower court's opinion. The lower court complained that "Any contention by the Jabrani objectors that there will not be enough claims made to deplete the settlement fund is mere speculation" (Opinion 42), but that does not change the district court's *duty* to determine the number of claims. It had no factual basis to assume or speculate that the claims fund would be depleted— especially since the burden of proving settlement fairness rests on the movants. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718-19 (6th Cir. 2013) (compiling cases and

---

[4] The district court noted that "historical warranty claims data" suggested that CertainTeed would have paid only $3.8 million in warranty claims during the claims period. Opinion 40. It did not reconcile this figure with the fact that Jabrani's warranty claim would have paid him 40% of his claim, and instead assumed *sub silentio* without any supporting evidence that CertainTeed would have paid less than 5% of claims ($3.8 million out of $90 million) via warranty.

authorities); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.05(c) (2010) ("*ALI Principles*").

Jabrani argued, as *Baby Products* and the *Manual for Complex Litigation* suggest, that the fees should be doled out as the class is paid to ensure that fees are proportional to direct class recovery. Objection 19. The court rejected that proposal, but on the grounds that CertainTeed asserted "that it has access to sufficient funds to permit it to fulfill its obligations to pay into the settlement fund." Opinion 42. The lower court missed the point.

Below class counsel argued that *Baby Products* was not applicable because there was no explicit *cy pres* provision here. But that just makes this settlement *worse* than *Baby Products*. *Baby Products* found excessive *cy pres* problematic because "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients." But if class members prefer actual payments to the class to *cy pres*, they surely prefer *cy pres* to money sitting uselessly in a settlement fund—or being returned to CertainTeed, as Settlement § 4.5 explicitly provides for. And, as noted above, nothing precludes the parties, with release and oversized attorney-fee in hand, from agreeing in 2021 to ask for *cy pres* for most of the over $70 million that will be sitting in the Settlement Fund on the grounds that there is no conceivable chance that the fund will be exhausted.[5]

---

[5] Appellees once again misstate the record: Jabrani's motion for attorneys' fees did *not* "withdraw the objection" (Appellees' Motion 11 n.8), as the motion explicitly preserved the appellate issue, and argued that Jabrani was entitled to fees in the alternative should the court hold that Addendum B was meaningful. Dkt. 120. In any event, because the motion was denied, there cannot be judicial estoppel.

*Baby Products* requires reversal here. At a minimum, it demonstrates that there is a substantial issue precluding summary disposition.

## C. Rule 23(h), *Mercury Interactive*, and *High Sulfur* each independently require reversal.

Rule 23(h) authorizes the Court to award "reasonable" attorneys' fees only when the *motion* of the fee request is "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h), (h)(1) "Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Notes of Advisory Committee on 2003 Amendments to Rule 23. But the preliminary approval order limited class members to objections on or before December 31, 2013, and class counsel gave no notice to the class about the basis for their fee request. This is reversible error, because the class was given no opportunity to challenge class counsel's argument for their $18.8 million award, an amount that perhaps outstrips actual class recovery, and is certainly disproportionate to the present value of actual class recovery, at least half of which will not be awarded until 2021. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010).

The district court rejected this argument because the class notice gave a vague announcement of the *amount* that the attorneys would seek. Opinion 41-42. But that contradicts both *Mercury Interactive* and the plain language of Rule 23(h), which refers to the "motion." It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *In re Mercury Interactive Corp. Secs. Litig.*,

618 F.3d 988, 994 (9th Cir. 2010). Moreover, the notice in this case suggests that multiple law firms will receive fees, but it fails to provide even the bare bones of who seeks what, instead suggesting only a lump sum, presumably to be distributed outside the aegis of the Court. This implicit extra-judicial award undermines Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *Id.*

As the Fifth Circuit recently noted: "In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). The district court "must not … delegate that duty to the parties." *Id.* at 228 (internal quotation omitted). The appellants in *High Sulfur* complained that the district court had sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: "One cannot compare apples to oranges without knowing what the oranges are." *High Sulfur*, 517 F.3d at 232.

That court also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves. "It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts.' As Judge Ambro of the Third Circuit had noted earlier, 'They make recommendations on their own fees and thus have a financial

interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'" *Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)).

The prejudice to Jabrani is more than hypothetical; he was not permitted to supplement his objection after the December 31 deadline. Dkt. 117. A fee motion that complied with Rule 23(h) would have permitted Jabrani to point out that 12,656 hours on a case that settled on Docket Entry No. 25 (before a single substantive motion was filed and where nearly every single docket entry is a stipulation for additional time) when it involved the production of only 50,000 pages of documents (Dkt. 86) was absurd—as was the $1461/hour blended rate class counsel was requesting in a case where they faced no substantive risk.

Though this argument was a prominent part of Jabrani's objection (Objection 20-22), class counsel's motion for summary affirmance does not even mention (much less distinguish) these cases or the fact that they are requesting a circuit split. Class counsel has waived any claim that these are not substantive issues. Perhaps the Third Circuit will ultimately disagree with the Fifth and Ninth Circuits (and its own *dicta* in *Diet Drugs*), but the issue deserves full briefing.

## D.    *Eubank v. Pella Corp.* requires reversal.

On June 2, the Seventh Circuit reversed approval of a similar building-materials settlement for, *inter alia*, grounds identical to those raised by Jabrani here. *Eubank, supra.* (Jabrani's counsel was counsel for an objector in *Eubank.*)

Now, the *Eubank* settlement has many problems that this settlement does not have: there was a Rule 23(a)(4) intra-class conflict; the class representative was a

family member of the lead class counsel; and there were Rule 23(g)(4) adequacy concerns. But a critical issue that ultimately resulted in settlement rejection was the *Eubank* settlement's "one-sidedness of its terms" where class counsel received $11 million, but the class's recovery would only be about $8.5 million. Here, we are looking at class counsel receiving $18.8 million and the class likely less than that—and an even smaller present value once one accounts for the fact that most payments will not be made for six years.

The problems of one-sidedness here are even worse than in *Eubank*. *Eubank* had an uncapped claims-made fund; here, the claims fund is capped. *Eubank* reversed despite the fact that district court made a factual finding that there would be $90 million of claims on the basis of an expert report that assumed all claims would be made and granted for the maximum possible amount; the failure of the court to look at the actual claims made and the likelihood of claims denial after the parties admitted that only a few thousand claims were made meant that the lower court's finding deserved no weight. In contrast, the assumption that the fund would be exhausted here was based entirely on class counsel's *ipse dixit*—and, as shown above, his own declaration (and the representation to this Court that there have been only 2,016 claims so far) contradicted that assumption. (*Eubank*, in contrast, had over 10,000 claims made, despite a smaller cap and a more difficult claims process.)

As in *Baby Products, Eubank* held it reversible error to fail to consider the actual claims made in computing the value of the settlement—even when the district court relied upon evidence to optimistically predict the number of claims made. Class counsel, though they were aware of *Eubank* (Jabrani's counsel notified class counsel of

the Seventh Circuit decision), does not mention it once in their opening brief, much less distinguish it. They have waived any claim that *Eubank* does not present a substantive issue. Perhaps this Court will create a circuit split with *Eubank*, or perhaps this Court will find grounds to distinguish *Eubank*, but that should not be done summarily.

**E.   Class counsel's *ad hominem* attacks do not justify summary action.**

Class counsel makes much of the identity of one of the Jabranis' counsel, Christopher Bandas, devoting several pages of their brief to smearing him. Some trial courts have criticized Mr. Bandas, but Mr. Bandas has been a successful appellant in this Court and others. *Baby Products, supra*; *Eubank v. Pella Corp., supra*; *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012). Either way, personal attacks are not legal argument. It is simply class counsels' substitution of abusive remarks for analysis. This Court should reject Class Counsels' invitation to decide this case on that basis.

In any event, the Jabranis are represented in this Court by Theodore H. Frank, whom the *New York Times* calls "the leading critic of abusive class action settlements." Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12. In his career, Mr. Frank has won eight of the ten federal appeals of class action settlements he has argued that have been resolved on the merits of his clients' appeals, including both Third Circuit cases involving approvals of class action settlements. *E.g., Baby Products, supra*; *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012); *Eubank, supra*; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Mr. Frank was also on the briefs in *Dry Max Pampers*. The identity of one of the Jabranis' counsel and his

litigation history should be irrelevant to the merits of the case. *Cf. Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010). But to the extent this Court accepts class counsel's invitation to personalize the case, Mr. Frank's role as lead appellate counsel militates against summary affirmance.

In a several-hour deposition with numerous abusive questions, class counsel were able to get the lay-witness objectors to admit they had relied on counsel to read a complex 38-page settlement agreement. The Jabranis also testified that they did not know precisely how much the settlement would pay them. Class counsel trumpets these facts in their motion, but do not contend that they have any legal significance. Nor can they. Nothing in Rule 23(e)(5) requires an objector to have sufficient legal training to meaningfully review a 38-page settlement agreement, rather than rely upon counsel to explain it to them. And Jabrani's *counsel* does not know how much the settlement will pay the Jabranis because of the ambiguity of Settlement § 7.3 and the contradictory statements in the district court opinion. Jabrani, in his deposition, was able *from memory* to explain his objection in general terms as well as a lay objector could given the complexity of Rule 23(e)(5) and the case law—but had no obligation to demonstrate that level of mastery of the case. Jabrani Depo. 164-65.[6]

---

[6] Note, too, that it is extremely doubtful that the class representatives could go through a multiple-hour deposition without getting questions wrong about the settlement they supposedly authorized. There is no evidence that the class representatives ever read the settlement; they did not sign it, for example.

## II.    Class Counsel's motion vexatiously multiplies proceedings and merits sanctions under 28 U.S.C. § 1927.

Class counsel has filed (and at the last minute, CertainTeed joined) a baseless motion to dismiss without once mentioning the basis for Jabrani's appeal or mentioning, much less distinguishing, any of the dispositive cases Jabrani relies upon. Because class counsel filed a motion to dismiss,

- Jabrani is required by FRAP 27(a)(3) and 27(d)(2) to file an opposition to a motion to dismiss on short notice substantively defending the merits of his appeal within 20 pages instead of the weeks and 14,000 words permitted by FRAP 28;

- class counsel, by making their merits argument in a Rule 27 motion instead of a merits brief, will get a *de facto* ten-page surreply that they would not normally be permitted;[7]

- class counsel gets two bites at the apple: both a three-judge motions panel and a three-judge merits panel will decide whether the decision below should be affirmed.

This is wrong, and should not be tolerated.

> Motions for summary affirmance generally should be confined to
> certain limited circumstances. Summary disposition is appropriate
> in an emergency, when time is of the essence and the court cannot
> wait for full briefing and must decide a matter on motion papers

---

[7] And given that class counsel's motion does not mention a single one of the appellate cases Jabrani is relying upon and that they knew Jabrani is relying upon, they are presumably impermissibly sandbagging their counterarguments for that Rule 27 reply brief. Any such new arguments in the reply brief should be deemed waived.

alone. Summary affirmance may also be in order when the arguments in the opening brief are incomprehensible or completely insubstantial. Finally, summary affirmance may be appropriate when a recent appellate decision directly resolves the appeal.

*United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006). None of these limited circumstances apply here. As discussed in Section I above, not only can plaintiffs not meet this standard here, but their arguments are substantively frivolous because they fail to squarely address binding precedent and the relevant out-of-circuit cases—and making them in a motion to dismiss where the legal burden is so high is doubly frivolous.

*Fortner*'s complaint about the inappropriateness of motions to dismiss is particularly appropriate here:

> [The] submission in this case is fifteen [here, twenty] pages long, and but for the formal requirements of Federal Rule of Appellate Procedure 28, it is essentially a brief on the merits. But by filing it the [appellee] has wasted the resources of this court. (Six judges will ultimately consider this appeal: three on the motions panel and three on the merits panel.) The [appellee] could have made these same arguments in a brief and moved to waive oral argument if it felt that argument would be unhelpful.

*Id.* Class counsel has unnecessarily multiplied proceedings, wasting both the Court's and Jabrani's counsel's time. 28 U.S.C. § 1927 requires an award of attorneys' fees for this vexatious behavior.

## Conclusion

For the reasons set forth above, the Jabranis respectfully requests that this Court deny class counsel's motion, and grant appellants' cross-motion for sanctions.

Dated:  July 28, 2014                    Respectfully submitted,

                                         */s/ Theodore H. Frank*
                                         Theodore H. Frank
                                         1718 M Street NW, No. 334
                                         Washington, DC 20036
                                         Telephone:  (703) 203-3848
                                         Email:  tfrank@gmail.com

                                         Christopher A. Bandas
                                         BANDAS LAW FIRM, P.C.
                                         500 North Shoreline, Suite 1020
                                         Corpus Christi, Texas  78401
                                         Telephone:  (361) 698-5200
                                         Facsimile:  (361) 698-2222

                                         Attorneys for Appellants

**Proof of Service**

I hereby certify that, on this 28th day of July, 2014, I electronically filed the foregoing on the electronic docketing system for the Court of Appeals for the Third Circuit, thereby effecting service on counsel of record under L.A.R. 113.4.

*/s/ Theodore H. Frank*
Theodore H. Frank